**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

RODRICK DOMONIQUE JONES,

      Petitioner,

      v.

H.L. RAY,

      Respondent.

CIVIL ACTION NO.: 2:25-cv-85

## <u>ORDER AND REPORT AND RECOMMENDATION</u>

Petitioner Rodrick Jones ("Jones"), who is incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia ("FCI Jesup"), filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus.  Doc. 1.  Respondent filed a Motion to Dismiss Jones's Petition, and Jones filed a Response.  Docs. 9, 10.  For the following reasons, I **RECOMMEND** the Court **GRANT in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Jones's Petition.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Jones *in forma pauperis* status on appeal. I **GRANT** Jones's Motion to Expedite, as amended, to the extent I am issuing this Report. Docs. 3, 13.

## BACKGROUND

Jones was convicted in the District Court for the Southern District of Florida of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d).  Doc. 9-1 at 6.  Jones was sentenced to 150 months' imprisonment.  He has a statutory release date of November 11, 2029, via good

conduct time, a projected release date of November 11, 2028, via First Step Act ("FSA") release, and a home detention eligibility date of May 11, 2028. Id.

The following dates are relevant to Jones's claim. Jones was sentenced on January 16, 2020. However, it appears that Jones did not arrive at FCI Jesup—where he is currently housed—until May 14, 2021. Doc. 1 at 6. The record is not clear about where Jones was held between January 16, 2020 and May 14, 2021, but it appears undisputed that Jones was in federal custody during that time. See id. (Jones stating that he "worked productively as a unit orderly" during the relevant period). The BOP has determined that Jones first became eligible for FSA credits upon his arrival at FCI Jesup on May 14, 2021.

In his Petition, Jones makes one claim. Jones contends that he was eligible to earn and accrue FSA time credits from the date his sentence commenced, not the date he was received at the designated facility to serve his sentence. Doc. 1 at 6. In other words, Jones contends that he should have been earning credits (or at least he should have been eligible to earn credits) from January 16, 2020 to May 14, 2021. Jones asserts that the "plain language" of the FSA supports his position. Id. at 6. Jones contends that all Bureau of Prisons ("BOP") facilities are designated institutions and all eligible inmates earn time credits if they have not opted out of participation in FSA programming and services. Id. Jones asks the Court to order the BOP to recalculate his FSA credits using his sentencing date rather than the date he arrived at FCI Jesup.

Notably, Jones does not contend that he would be released from custody any sooner based on a recalculation; instead, he contends he would be eligible for "prerelease custody" (i.e., home confinement or placement in a residential reentry center) earlier. Doc. 10 at 2. This is because Jones has already earned the maximum number of early release credits available under the FSA.

Respondent contends the Court should dismiss Jones's Petition for several reasons. Doc. 9. First, Respondent maintains that Jones does not set forth a claim for habeas corpus relief. Respondent states that Jones's claims are not ripe for review. In addition, Respondent asserts that Jones has no liberty interest in FSA time credits and this Court lacks jurisdiction under the Administrative Procedures Act to review Jones's claims. Finally, Respondent notes this Court does not have the authority to determine Jones's place of confinement. Id. at 2.

## DISCUSSION

## I.   Jones Does Not Set Forth a Proper Habeas Corpus Claim

Respondent states that Jones fails to state a valid habeas corpus claim. Doc. 9 at 3. Respondent states that Jones has earned the statutorily allowed maximum days of FSA credit that can be used toward early release and any credits under the FSA beyond what the statute provides can only be applied toward a transfer to "prerelease custody" (i.e., residential reentry center ("RRC") or on home confinement). Id. Respondent contends that any transfer to prerelease custody would merely be a change in Jones's custody location and would not impact the fact or duration of Jones's confinement; thus, Jones cannot use habeas corpus to challenge the location of the service of his sentence. Id.

In his Response, Jones reiterates his claim that the BOP has incorrectly calculated his credits by denying him certain credits available to him under the FSA. Doc. 10 at 2. Jones contends he is challenging the execution of his sentence and, therefore, he raises a habeas claim. Id. at 1–2. Jones does not, however, directly address Respondent's argument or the distinction between prerelease custody and release from custody, as it pertains to the propriety of habeas relief.

3

At the outset, it is important to stress that Jones does not seek early release from custody or even a recalculation of FSA credits that would lead to early release from custody.  Under the FSA, an inmate who is sentenced to imprisonment and a term of supervised release—and Jones qualifies—can earn a maximum of 365 days credit to reduce the custodial portion of the sentence.  18 U.S.C. § 3624(g)(3).  There is no dispute that Jones has already earned the 365-day maximum number of credits for reducing his custodial sentence.  Doc. 9.  Indeed, Jones states that if his Petition were granted, he would only "be eligible for Pre-Release custody" at an earlier time.  Doc. 10 at 2.  Thus, even if Jones's Petition were granted in its entirety, Jones would not be released from BOP custody any earlier.

Instead, Jones's claim concerns credits toward "prerelease custody."  The FSA allows inmates to earn credits and apply the credits "toward time in prerelease custody or supervised release."[1]  18 U.S.C. § 3632(d)(4)(C).  Prerelease custody includes placement in an RRC (i.e., a halfway house) or in home confinement.  Id. § 3624(g).  There is no numerical cap on the number of earned time credits that can be applied toward transfer to prerelease custody. See Woolsey v. Warden, No. 2:25-cv-137, 2025 WL 2598794, at *6 (M.D. Ala. Sept. 8, 2025).

Jones contends that the BOP has miscalculated his number of earned time credits and that the miscalculation has deprived him of credits that could be applied toward transfer to prerelease custody.  In other words, if the Court granted Jones's Petition in its entirety, Jones would, at most, be eligible for placement in an RRC or in home confinement at an earlier date than the date the BOP has calculated.

Respondent contends that moving Jones from a federal correctional institution to an RRC or home confinement would merely be a change in the location of Jones's incarceration and

---

[1]     The portion of § 3632(d)(4)(C) concerning supervised release is not relevant here.

would not change the duration of confinement.  Because Jones would remain confined in BOP custody under any of these scenarios, Respondent contends that Jones has not stated a valid claim for habeas relief.  Thus, the Court must first determine whether Jones's claim—which only seeks a recalculation of FSA credits that would result in an earlier transition to prerelease custody—is a valid habeas claim.

### A.     Legal Authority

A petitioner can use the writ of habeas corpus to challenge "the fact or duration of . . . physical confinement itself" or the execution of the sentence itself.  Preiser v. Rodriguez, 411 U.S. 475, 498 (1973); Antonelli v. Warden, U.S.P. Atlanta, 542 F.3d 1348, 1352 (11th Cir. 2008).  In contrast, when prisoners bring actions to challenge the circumstances of their confinement, these are civil actions, not habeas corpus actions.  See, e.g., Hill v. McDonough, 547 U.S. 573, 579 (2006); Gorrell v. Hastings, 541 F. App'x 943, 945 (11th Cir. 2013); cf. see, e.g., Edwards v. Balisok, 520 U.S. 641 (1997); Heck v. Humphrey, 512 U.S. 477 (1994) (noting that if a prisoner's claim, if successful, could shorten or invalidate a term of imprisonment, the claim sounds in habeas).  "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law."  Vaz v. Skinner, 634 F. App'x 778, 780 (11th Cir. 2015).

The Eleventh Circuit Court of Appeals has not provided any clear, binding guidance on whether a claim like Jones's claim constitutes a valid habeas claim or a conditions-of-confinement claim.  See Woolsey, 2025 WL 2598794, at *8 (M.D. Ala. Sept. 8, 2025) ("It does not appear that the Eleventh Circuit has specifically addressed what statutory vehicle should be used by a federal prisoner to challenge where a federal sentence should be served for purposes of

prerelease custody under the FSA."); id. (noting that "[d]etermining what constitutes a challenge to the execution of a sentence—when its duration remains unchanged—is where things get murky[,]" and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005)); Javat v. Warden, FCI Miami, No. 24-22645-CIV, 2025 WL 3617223, at *7 (S.D. Fla. Sept. 23, 2025), report and recommendation adopted, 2025 WL 3610618 (S.D. Fla. Dec. 12, 2025) (noting that the distinction is "murky" or "hazy"); Boyd v. Warden, FCC Coleman-Low, Case No.: 5:25-cv-44, 2026 WL 113600, at *3 (M.D. Fla. Jan. 15, 2026); R. & R., Reyes v. Warden, FCI Jesup, Case No. 2:24-cv-107 (S.D. Ga. July 25, 2025), ECF No. 13, p. 2 ("This Court was unable to find a published Eleventh Circuit Court of Appeals case settling the question of whether a petitioner can successfully challenge his PSF designation via a § 2241 habeas petition.").

District courts in the Eleventh Circuit have recently addressed the issue but have reached different conclusions.  For example, in Woolsey v. Warden, the court considered a § 2241 petition from an inmate who alleged that the BOP had improperly denied applying earned time credits toward the inmate's time in prerelease custody.  2025 WL 2598794, at *1.  The Woolsey court acknowledged that the "weight of authority indicates that prerelease custody is part of the term of imprisonment," meaning that applying credits to an inmate's placement in prerelease custody would "not impact the duration of the imposed term of imprisonment."  Id. at *8. Nonetheless, the Woolsey court stated that it had not identified "any on-point binding precedent supporting the argument that § 2241 does not confer jurisdiction for relief seeking placement in prerelease custody under the FSA."  Id.  The Woolsey court observed that § 2241 jurisdiction exists for challenges to the "execution" of sentence, which can include challenges to the place of imprisonment and manner and conditions of confinement.  Id. at *9.  The Woolsey court emphasized that confinement in a penal institution is "very different" from prerelease custody

and that prerelease custody serves the important goal of "reintegrating an inmate into society." Id. (quoting Woodall, 432 F.3d at 243). Ultimately, the Woolsey court determined that it had jurisdiction under § 2241 to adjudicate the petitioner's claim seeking placement in prerelease custody.

In Javat v. Warden, FCI Miami, the court considered a claim by an inmate that the BOP had unlawfully denied the inmate FSA credits that prevented the inmate from entering prerelease custody at an earlier date. 2025 WL 3617223, at *1. Unlike the Woolsey court, the Javat court concluded that it did not have jurisdiction under § 2241 to adjudicate the petitioner's claim seeking placement in prerelease custody. The Javat court explained that, typically, a complaint by an inmate about where the inmate is detained (i.e., "a place-of-confinement claim") is not cognizable in a habeas proceeding, particularly because Congress has given the BOP wide discretion on where to house inmates.[2] Id. at *6. The Javat court concluded that claims like the petitioner's—i.e., those seeking earlier placement in prerelease custody under the FSA—are "more aptly described as conditions-of-confinement issues not cognizable in a habeas proceeding." Id. at 8; see also Boyd v. Warden, FCC Coleman-Low, No. 5:25-CV-44, 2026 WL 113600, at *4 (M.D. Fla. Jan. 15, 2026) (concluding that petitioner's claim seeking earlier transfer to prerelease custody under the FSA "ultimately relate[s] to the conditions of his confinement, not the execution of his sentence, and [is] therefore not redressable through a habeas proceeding"). In support of its conclusion, the Javat court pointed to authority suggesting

---

[2]    Prerelease custody determinations are placement decisions that typically lie within the BOP's discretion. See 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621."); see also 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). "The decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002).

that an inmate has no liberty interest in transfer to home confinement and emphasized that the BOP retains significant discretion in determining an inmate's place of confinement.

In both Javat and Woolsey, the courts discussed persuasive authority from outside of the Eleventh Circuit, noting what appears to be a Circuit split. The Fifth Circuit of Court of Appeals and district courts within the Eighth Circuit have concluded that there is no jurisdiction under § 2241 for claims seeking application of FSA credits to prerelease custody. See, e.g., Maxwell v. Thomas, 133 F.4th 453, 454 (5th Cir. 2025); Reaves v. Garrett, No. 2:24-cv-177, 2025 WL 890147, at *2 (E.D. Ark. Mar. 21, 2025) (noting that prerelease custody "changes only the *place* where a sentence is served; it does not alter the fact or duration of imprisonment"), report and recommendation adopted, 2025 WL 1118580 (E.D. Ark. Apr. 15, 2025); Wessels v. Houden, Case No. 23-CV-1266, 2023 WL 7169154, at *1 (D. Minn. June 22, 2023) (A "legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another) is not a challenge to the fact or duration of confinement." (citing 18 U.S.C. § 3624(c) and collecting cases)). The Fifth Circuit utilizes a bright-line rule: "if a favorable determination of the prisoner's claim would not automatically entitle him to accelerated release, then the proper vehicle is a civil rights suit." Maxwell, 133 F.4th at 454 (concluding that claim seeking earlier transfer to prerelease custody under the FSA is cognizable under § 2241). It appears that courts in the Fourth Circuit take a similar view. See, e.g., Fiorentino v. Wolfe, No. 5:22-CV-304, 2023 WL 4114615, at *3 (N.D. W. Va. May 22, 2023), report and recommendation adopted, 2023 WL 4111390 (N.D. W. Va. June 21, 2023) (rejecting a claim for transfer to another facility under the FSA noting that the claim "one that would not fall within the scope of habeas corpus." (quoting Wilborn v. Mansukhani, 795 F. App'x 157, 164 (4th Cir. 2019))).

In contrast, courts in the First and Second Circuits have concluded that courts have jurisdiction under § 2241 to adjudicate claims seeking transfer to other forms of BOP custody (e.g., community confinement centers, halfway houses, and home confinement).[3]  See, e.g., Francis v. Maloney, 798 F.3d 33, 36 (1st Cir. 2015) (noting that inmates may use a § 2241 petition "to challenge placement (or lack thereof) in a community confinement center, or to contest one's imprisonment in a specific facility"); Williams v. Warden, FCI Berlin, 793 F. Supp. 3d 412, 422 (D.N.H. 2025) (concluding that under the law in the First Circuit, a claim for placement in prerelease custody under the FSA should be pursued in a § 2241 petition); Paulino v. Flowers, No. 3:24-CV-1569, 2025 WL 297388, at *1 (D. Conn. Jan. 24, 2025) (concluding that § 2241 is the proper mechanism for seeking placement in prerelease custody under the FSA and citing Levine v. Apker, 455 F.3d 71, 78 (2d Cir. 2006), but dismissing petition for failure to exhaust administrative remedies).  Those courts tend to take a broad view of the types of claims that can be pursued in a § 2241 petition.  See, e.g., United States v. DeLeon, 444 F.3d 41, 59 (1st Cir. 2006) ("If the conditions of incarceration raise Eighth Amendment concerns, habeas corpus is available.").

In Javat and Woolsey, the courts also discussed Eleventh Circuit cases that are not directly on point, but that those courts found to be informative on the issue.  The Javat court relied heavily on Sills v. FCI Talladega Warden, No. 22-12656, 2023 WL 1775725, at *3 (11th Cir. Feb. 6, 2023), and Touizier v. U.S. Att'y Gen., No. 21-10761, 2021 WL 3829618, at *2

---

[3]     The Javat and Woolsey courts stated that the Third Circuit Court of Appeals would likely allow these sorts of claims to proceed under § 2241 as well, citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005).  But more recent district court decisions in the context of FSA prerelease claims do not necessarily support that view.  See, e.g., Watkins v. Warden of FCI-Lewisburg, No. 1:26-CV-00138, 2026 WL 192486, at *4 (M.D. Pa. Jan. 26, 2026) ("[P]etitions seeking transfer to pre-release custody based on the FSA that do not allege that the BOP's conduct is somehow inconsistent with a command or recommendation in his sentencing judgment fail [to satisfy the jurisdictional requirements for § 2241 petitions.]").

(11th Cir. Aug. 27, 2021), to support its conclusion that habeas review is not available to enforce prerelease decisions under the FSA.

In Sills, the petitioner sought placement in home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act). 2023 WL 1775725, at *1. The Eleventh Circuit concluded that the district court properly dismissed the petition because the court "lacked the authority to order [petitioner's] placement in home confinement, and that the [petitioner] could not state a procedural-due-process claim because he lacked a constitutionally protected liberty interest in his place of confinement." Id. The court's analysis focused on whether the court had the authority under the CARES Act to order an inmate placed in home confinement and whether the petitioner had any protected liberty interest in home confinement under the CARES Act. The court answered both questions in the negative. In Touizier, the court dealt with a very similar claim and succinctly concluded that the CARES Act provided no authority for a court to order an inmate into home confinement. 2021 WL 3829618, at *2. Notably, neither Sills nor Touizier addressed or resolved whether a claim seeking placement in home confinement (or a halfway house) is cognizable under § 2241.

The Woolsey court relied on United States v. Saldana, 273 F. App'x 845 (11th Cir. 2008), to support its conclusion that claims seeking placement in prerelease custody under the FSA are properly brought under § 2241. In Saldana, the court considered motions by pro se inmates, seeking to vacate a separation order so that the petitioning inmates could be housed in the same prison. The court concluded that the inmates were "challenging where they are confined" and, therefore, "the district court should have construed their motions as federal habeas petitions filed pursuant to 28 U.S.C. § 2241." Id. The court remanded the case and

10

directed the district court to transfer the construed petitions to the respective district courts where each inmate was housed.  Id.

**B.      Analysis**

I have considered the thorough and studious discussions of this issue in Woolsey and Javat, as well as much of the persuasive authority discussed in those cases.  One thing is abundantly clear: the law is perfectly unclear about this particular issue.  The United States Supreme Court has not addressed the issue, nor has the Eleventh Circuit, and the Courts of Appeals outside of the Eleventh Circuit are divided.  Even district courts in the Eleventh Circuit have come to opposite conclusions, despite thorough and scholarly analysis.  Ultimately, I determine that Jones's claim—which, if granted, would merely result in his earlier transfer to prerelease custody under the FSA—challenges his conditions of his confinement, not the execution of his sentence, and is therefore not redressable through a habeas proceeding.[4]

The Supreme Court's decision in Preiser v. Rodriguez provides a starting point for analyzing this issue.  411 U.S. 475, 484 (1973).  There, the Court explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  Id.  The Court made it clear that a prisoner challenging "the very fact or duration of his physical imprisonment" must pursue claims through habeas, not a civil rights action.  Id. at 499.  But that pronouncement does not resolve the issue before this Court—namely, whether a prisoner can use habeas to challenge something other than the fact or duration of his physical confinement, like conditions of

---

[4]      I acknowledge that in the past I have taken a different view.  See, e.g., Cobb v. Warden, USP Atlanta, No. 2:23-CV-8, 2026 WL 540283, at *2 (S.D. Ga. Feb. 26, 2026) ("To the extent Cobb seeks prerelease custody under the FSA, § 2241 is likely the appropriate jurisdictional vehicle for challenging denials of placement in pre-release custody under the FSA.").  However, I have considered the issue anew, and I now conclude that § 2241 is not the appropriate mechanism for asserting claims seeking placement in prerelease custody.

confinement. The Supreme Court left that question open, and it has not yet answered it. See Ziglar v. Abbasi, 582 U.S. 120, 144 (2017) ("We have left open the question whether [prisoners] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus." (citing Preiser).

The Eleventh Circuit has touched on the issue of the use of a § 2241 habeas petition to challenge placement in alternative forms of custody but has not provided a clear answer. As noted above, in Sills, 2023 WL 1775725, and Touizier, 2021 WL 3829618, the court rejected habeas petitions seeking placement in home confinement under the CARES Act, strongly suggesting that such a petition lacks merit. But, in those cases, the court appeared more focused on whether the statute at issue provided the courts with authority to provide the requested relief than whether such a claim was cognizable in habeas at all.

In some unpublished decisions, the Eleventh Circuit has indicated that claims challenging certain aspects of confinement (perhaps even "conditions" of confinement) can be challenged in a habeas petition. As noted above, in Saldana, the court concluded that an inmate's challenge to the place of confinement (i.e., the specific prison) should have been construed as a habeas petition under § 2241. But the court provided almost no analysis there, and the habeas conclusion was largely immaterial, given that the requests were filed in the wrong districts.

In Daker v. Warden—also an unpublished decision—the court explained that "habeas corpus petitions under § 2254 and complaints under § 1983 . . . are mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action."[5] 805 F. App'x 648, 650 (11th Cir. 2020). The court acknowledged that the

---

[5] Admittedly, the unique circumstances of § 2254 and § 1983 actions may make the court's statements in Daker less instructive. Likewise, the unique claim in that case—a challenge to placement in administrative segregation—may render the decision inapplicable in this case.

Supreme Court in <u>Preiser</u> speculated that a prisoner might be able to use a habeas petition to challenge "additional and unconstitutional restraints during his lawful custody" but also noted that the Supreme Court "never followed that speculation." <u>Id.</u> Ultimately, the court concluded that the petitioner in that case could challenge his placement in administrative segregation in a habeas petition, given that it went to the "fact or duration" of the petitioner's physical imprisonment. However, the court rejected the petitioner's attempts to challenge other conditions of his confinement in a habeas petition.

The <u>Woolsey</u> and <u>Javat</u> courts grappled with deciding if a petitioner can use a § 2241 petition to challenge some aspect of his confinement—specifically, placement in prerelease custody under the FSA—when that challenge would not result in immediate or accelerated release from custody. In those cases, the courts considered the purpose of prerelease custody (i.e., reintegration into society), the differences between prerelease custody and confinement in a penal institution (e.g., the nature of the restraints on movement), whether the BOP had some (or any) discretion in deciding whether to place an inmate in prerelease custody, and whether the inmate had any protected liberty interest in placement in prerelease custody. After weighing those considerations and the various approaches taken by other courts, the <u>Woolsey</u> and <u>Javat</u> courts came to opposite conclusions. The opposite results in those two cases highlight the problems with the "hazy" and "murky" distinction between when a prisoner can use a habeas petition to challenge conditions of confinement, but not seek early or immediate release, and when the prisoner cannot.

In my view, the inquiry should be clear and discrete: if a petitioner's claim would result in immediate or accelerated release from confinement if granted, then the proper vehicle is a habeas petition; otherwise, the proper vehicle is a civil rights suit. This is consistent with the

13

bright-line rule the Fifth Circuit uses.[6] Maxwell, 133 F.4th at 454. It is also consistent with the approach taken in the Eighth Circuit in cases like Wessels, 2023 WL 7169154, at *1 (A "legal action seeking transfer from one form of BOP custody to another (like a legal action seeking transfer from one BOP facility to another) is not a challenge to the fact or duration of confinement." (citing 18 U.S.C. § 3624(c) and collecting cases)); see also Boyd, 2026 WL 113600, at *4 ("If the Court were to grant Boyd his requested relief, he would not be released from custody sooner. Instead, he would simply serve the remainder of his term of imprisonment somewhere different—in home confinement or at an RRC, both of which are a form of prerelease custody.").

A bright-line rule has many benefits. First and foremost, trial courts can readily determine the proper procedural mechanism for the claim at the outset of the suit. The distinction is important because the nature of the suit will impact analysis of other issues, like the need for exhaustion of administrative remedies, the proper respondent or defendant in the case, and whether the petitioner-plaintiff has paid the appropriate filing. A bright-line rule is also consistent with much of the authority dealing with the distinction between habeas and civil rights claims. The Eleventh Circuit has explained that the Supreme Court has continued to "focus solely on the requested relief for distinguishing between habeas corpus and section 1983 claims" and has explained that prisoners who do not seek release from custody do fit "within the class of

---

[6] In Gwin v. Snow, 870 F.2d 616, 625 (11th Cir. 1989), the Eleventh Circuit expressly rejected a "bright-line" test the Fifth Circuit announced in Serio v. Members of the La. State Board of Pardons, 821 F.2d 1112 (5th Cir. 1987), but that appears to be a different test. In Serio, the Fifth Circuit adopted the following rule: "If a prisoner challenges a single hearing as constitutionally defective, he must first exhaust state habeas remedies." The Eleventh Circuit rejected that test, noting that it conflicted with Preiser, in that it did not focus solely on the relief requested to distinguish between habeas and civil rights claims. The bright-line rule discussed here, and the one I adopt, is consistent with that guidance from Preiser.

cases for which habeas corpus is the exclusive remedy."[7] <u>Gwin v. Snow</u>, 870 F.2d 616, 623 (11th Cir. 1989).  A bright-line rule focuses solely on the requested relief and, therefore, supports much of the authority discussing the contours of jurisdiction under § 2241.  Finally, a bright-line test avoids drawing the courts into many of the thorny issues discussed in <u>Javat</u> and <u>Woolsey</u>, like whether placement in an RRC or in home confinement is meaningfully different from a penal institution, such that placement in one or the other supports proceeding under § 2241.

Applying a bright-line rule in this case, it is clear that Jones cannot assert his challenge under § 2241.  Jones asks the Court to order the BOP to recalculate his FSA credits so that he began earning credits earlier—meaning that Jones earned more credits—so that he would be entitled to earlier transfer to prerelease custody.  Jones does not seek early release from BOP custody; he merely seeks earlier transfer to a different type of BOP custody.  Prerelease custody is likely very different from custody in a penal institution, but it is still, categorically, BOP custody.  And Jones does not ask for earlier release from BOP custody.  Thus, Jones fails to state a valid habeas claim under a bright-line rule.[8]

For the reasons set forth above, I conclude that Jones has not presented a valid habeas claim.  Therefore, the Court should grant this portion of Respondent's Motion to Dismiss and dismiss without prejudice Jones's § 2241 Petition.  Because I recommend that the Court dismiss Jones's Petition, I make no recommendation about the other arguments in the Motion to Dismiss.

---

[7]     The Eleventh Circuit has explained that habeas claims and civil rights claims are "mutually exclusive."  <u>Daker</u>, 805 F. App'x 648, 650 (11th Cir. 2020).  Because a claim is *either* a habeas claim *or* a civil rights claim, a bright-line test is crucial.

[8]     Although I apply a bright-line rule here, I note that if I were to engage in the a more detailed analysis, like the one set forth in <u>Javat</u>, I would reach the same conclusion in that case.

## II.      Leave to Appeal *in Forma Pauperis*

The Court should also deny Jones leave to appeal *in forma pauperis*.  Though Jones has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Jones's Petition and Respondent's Motion to Dismiss and Jones's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT in part** Respondent's Motion to Dismiss and **DISMISS without prejudice** Jones's Petition. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Jones *in forma pauperis* status on appeal. I **GRANT** Jones's Motion to Expedite. Docs. 3, 13.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 10th day of March, 2026.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

18